IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Linda Erdman, ) | Civil Action No. 7:10-cv-3070-JMC-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Wachovia,[1] ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on Defendant's motion for summary judgment. [Doc. 30.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., this magistrate judge is authorized to review all pretrial matters in employment discrimination cases and submit findings and recommendations to the District Court.

Defendant removed this action to this Court on December 2, 2010. [Doc. 1.] Plaintiff originally filed this action on October 28, 2010 in the South Carolina Court of Common Pleas for Spartanburg County, alleging Defendant's termination of Plaintiff violated the Age Discrimination Act ("ADEA"), constituted interference with her rights under the Family and Medical Leave Act ("FMLA") and the Employee Retirement Income Security Act ("ERISA"), and constituted a breach of contract. [Doc. 1-1.] On August 5, 2011, Defendant filed a motion for summary judgment. [Doc. 30.] On August 22, 2011, Plaintiff filed a response in opposition to Defendant's motion. [Doc. 32.] Defendant filed a reply

---

[1] Defendant asserts the proper defendant is Wells Fargo Bank, N.A., successor by merger to Wachovia Bank, National Association. [Doc. 9.]

on August 30, 2011. [Doc. 35.] Accordingly, Defendant's motion for summary judgment is now ripe for review.

## **BACKGROUND**[2]

Plaintiff was employed by Defendant from 1994 to 2009. [Doc. 1 ¶ 3.] She was initially hired as a part-time teller. [Doc. 30-1 at 3:20–21.] She became a full-time teller in 2000 [*id.* at 6:1–14, 7:4–9] and was thereafter promoted to a personal banker[3] or Service Transaction Specialist ("STS"), which authorized her to perform all teller functions and handle a few higher-level transactions [*id.* at 8:25–9:8; *see also id.* at 10:2–5, 23–25 (stating that at the time of her termination, her title and position had changed as a result of a merger).]

**Plaintiff's Illness**

For a period of weeks in late 2004 through early 2005, Plaintiff was out of work on FMLA leave and short-term disability because she was undergoing treatment for breast cancer. [*Id.* at 33:9–35:3.] After her leave period expired, she returned to work and resumed her position. [*See id.* at 36:7–19.] Plaintiff's cancer has been in remission since 2005. [*Id.* at 37:1–6.]

---

[2] In her response in opposition, Plaintiff conceded no genuine issue of material fact remained with respect to her ADEA, ERISA, and breach of contract causes of action and that she only opposed Defendant's motion with respect to her FMLA cause of action. [Doc. 32 at 1.] Plaintiff also "concede[d] to the facts as presented by Defendant regarding Plaintiff's employment with Defendant from . . . 1994–2009." [*Id.* at 2.]

[3] In her deposition, Plaintiff stated that she applied for and was promoted to a personal banker position. [Doc. 30-1 at 9:2–4.] Defendant referred to the position as STS [*id.* at 9:1], which appears to be the title/position Plaintiff held at the time of her termination [*see id.* at 10:2–5, 23–25].

According to Plaintiff, she began experiencing weight loss and hair thinning in late 2008 to early 2009. [*Id.* at 37:10–38:11.] Plaintiff learned her symptoms were caused by a thyroid problem. [*Id.* at 40:7–24.] She told only one person at work about her thyroid problem; she told other colleagues she was on a diet and intentionally losing weight. [*Id.* at 42:13–44:10; Doc. 30-2 at 19:15–20:13.] Plaintiff took doctors' appointments on her lunch break so that people would not know she might be sick; she just told people she had "appointments." [Doc. 30-1 at 45:17–25.] Plaintiff never asked for, took, or alerted anyone that she might need leave for a medical problem in late 2008 or early 2009. [*Id.* at 42:7–9, 45:14–17.]

**Plaintiff's Termination**

In her last position with Defendant, Plaintiff performed teller functions in the lobby of the branch where she worked and the branch's remote drive-through, and she had separate cash boxes for the lobby and the drive-through. [*Id.* at 20:14–15, 21:1–6.] Plaintiff's lobby cash box was kept in a locked compartment assigned to Plaintiff in the branch's main vault, and her drive-through cash box was kept in a similar locked compartment in the drive-through's vault. [Doc. 30-2 at 6:11–20, 11:19–12:4.] After using one of her cash boxes in the teller line, Plaintiff was expected to count the money in the cash box by hand, determine whether the box was in balance—meaning the amount of money on hand matched the amount that should have been on hand according to the transactions she had logged into the computer system that day—and sign a balancing

3

sheet setting forth the amount of money in her cash box, broken down by bill and coin denominations. [Doc. 30-1 at 12:14–13:17; Doc. 30-3 ¶ 3.]

If the cash box did not balance, Plaintiff was expected to recount the money by hand, review her transactions, solicit help from a manager, and attempt to determine the source of the error. [Doc. 30-1 at 13:10–15:22; Doc. 30-3 ¶ 3.] If she could not resolve the error, she was expected to report the discrepancy on her daily balance sheet. [Doc. 30-1 at 14:18–15:12; Doc. 30-3 ¶ 3.] Reported discrepancies were acceptable and did not endanger an employee's job, as long as they remained within pre-set limits. [Doc. 30-1 at 15:23–16:15, 17:5–6; Doc. 30-4 at 8:3–9:13.] At that time, employees were given incentive payments based in part on whether their cash box balanced. [Doc. 30-1 at 19:7–20; Doc. 30-2 at 18:13–17; Doc. 30-4 at 10:19–20.] Reporting a discrepancy had a negative effect on the employee's incentive pay. [Doc. 30-1 at 19:21–25; Doc. 30-2 at 18:17–19; Doc. 30-4 at 10:20–25.]

Defendant maintains a strict force balancing policy, which Plaintiff received and signed. [Doc. 30-1 at 17:17–19, 18:5–19:6; Doc. 30-5.] The policy states, "Manipulating your cash drawer, Teller System, or teller work to appear in balance is considered falsification of bank records," and in addition to other activities, force balancing encompasses "[i]ncluding money on [the employee's] balance sheet that is not in [the employee's] cash drawer." [Doc. 30-5.] Force balancing is grounds for disciplinary action up to and including termination, and in practice where Plaintiff worked, force balancing always leads to immediate termination. [Doc. 30-2 at 14:14–18; Doc. 30-4 at 11:13–18;

4

Doc. 30-5.] In addition to signing the force balancing policy, Plaintiff testified she was advised force balancing was grounds for termination. [Doc. 30-1 at 51:13–21.]

On April 27, 2009, Plaintiff's lobby cash box was audited by Teresa Johnson ("Johnson"), Plaintiff's Teller Manager. [Doc. 30-1 at 22:15–19; Doc. 30-2 at 5:4–8.] Johnson was expected to audit each teller once per month. [Doc. 30-2 at 3:13–4:6.] She selected Plaintiff's lobby cash box randomly. [*Id.* at 4:9–5:15.] At the time of the audit, Plaintiff's lobby cash box had not been used since February 2009 because, when she performed teller duties, Plaintiff was usually in the remote drive-through. [Doc. 30-1 at 24:6–25.]

When Johnson audited Plaintiff's lobby cash box, Johnson discovered it was $20 short. [Doc. 30-1 at 25:11–15; Doc. 30-2 at 13:11–13.] However, on the day she last used the lobby cash box, Plaintiff had signed a balance sheet representing the cash box was in balance, not short. [Doc. 30-7.] After Johnson advised Plaintiff of the shortage, Plaintiff counted the money herself, confirmed it was $20 short, and signed an audit report reflecting the corrected total. [Doc. 30-1 at 25:11–26:19; Doc. 30-2 at 13:13–16; Doc. 30-8.] When Plaintiff was asked to explain the difference between the amount in the box and the amount reflected on the balance sheet, Plaintiff said she was having trouble counting and relied on a mechanical currency counter, which "messed up." [Doc. 30-1 at 27:9–11, 28:5–9; Doc. 30-2 at 17:18–22.] Plaintiff was terminated that day. [Doc. 1-1 ¶ 11; Doc. 30-6 ¶¶ 4, 7.]

5

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude

6

granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Defendant contends Plaintiff's FMLA interference claim fails as a matter of law because there is no evidence (1) Plaintiff qualified for FMLA leave, (2) Plaintiff attempted to exercise any FMLA rights, or (3) Defendant knew about Plaintiff's alleged medical

7

condition. [Doc. 30 at 11–14.] The Court agrees Defendant is entitled to summary judgment on Plaintiff's FMLA claim, the only claim remaining in this action.[4]

The FMLA forbids an employer from interfering with an employee's exercise of her rights under the FMLA: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). To establish a claim for interference with FMLA rights, an employee must first demonstrate two threshold elements. First, the employee must "prove that she was afflicted with an FMLA-qualifying condition," that is, a serious medical condition as defined under the FMLA,[5] "because otherwise she did not have any right under the Act with which her employer could have interfered." *Rhoads v. FDIC*, 257 F.3d 373, 384 (4th Cir. 2001); *Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508, 515 (D. Md. 2008) (stating that one of the two core requirements for triggering an employer's obligations under the FMLA is a serious health condition); *see also* 29 U.S.C. § 2612(a)(1)(D) ("[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: . . . (D) Because of a serious health condition that makes the employee unable to perform the functions of the

---

[4] As previously stated, Plaintiff has conceded there is no genuine issue of material fact with respect to the three other claims raised in her Complaint. [Doc. 32 at 1.]

[5] A serious medical condition involves either inpatient care or continuing treatment by a healthcare provider. 29 C.F.R. § 825.113(a). A serious health condition involving continuing treatment by a healthcare provider requires "a period of incapacity," *id.* § 825.115, where "[t]he term 'incapacity' means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom," *id.* § 825.113(b).

8

position of such employee."). Second, the employee must demonstrate she made "a timely communication sufficient to put an employer on notice that the protections of the [FMLA] may apply," *Rodriguez*, 545 F. Supp. 2d at 516 (stating the second core requirement from triggering an employer's obligations under the FMLA is adequate communication by the employee), where sufficient notice is at least verbal notice that the employee may need FMLA-qualifying leave and the timing and duration of the leave, *Rhoads*, 257 F.3d at 382–83 (quoting 29 C.F.R. § 825.302(c)); *see also Peeples v. Coastal Office Prods., Inc.*, 64 F. App'x 860, 863 (4th Cir. 2003) ("Although an employee need not specifically mention the FMLA in requesting leave, employers 'are entitled to the sort of notice that will inform them not only that the FMLA may apply but also when a given employee will return to work.'" (quoting *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001))); 29 C.F.R. §§ 825.302(c), 825.303(b) (outlining what must be included in notice to the employer).

Here, Plaintiff has failed to demonstrate either of the two threshold elements. First, Plaintiff contends the serious medical condition element is satisfied because she took FMLA leave for breast cancer several years before her termination, and just prior to her termination, she exhibited symptoms that could be interpreted as a sign that her cancer had returned. [Doc. 32 at 4.] However, to succeed on a FMLA interference claim, Plaintiff must "prove that she was *afflicted* with an FMLA-qualifying condition," *Rhoads*, 257 F.3d at 384 (emphasis added); therefore, that Plaintiff exhibited symptoms allegedly demonstrating her breast cancer was no longer in remission is not sufficient to establish

9

the serious medical condition element. Further, the record shows Plaintiff was not afflicted with breast cancer at the time of her termination [Doc. 30-1 at 37:1–6 (stating her breast cancer has been in remission since 2005)], and there is no record evidence demonstrating, and Plaintiff does not contend, her thyroid condition was a serious health condition that rendered Plaintiff unable to perform the functions of her position, i.e., Plaintiff did not require inpatient care or continuing treatment that resulted in a period of incapacity [*see id.* at 38:6–41:20, 42:13–44:10, 45:14–25 (showing Plaintiff continued to work while undergoing testing that revealed the thyroid condition and treatment of the condition), 53:11–14 (stating she was able to work after her termination), 41:23–42:2 (stating her thyroid condition was controlled as of January 2011)]. Accordingly, Plaintiff has failed to demonstrate she was afflicted with an FMLA-qualifying condition, and therefore, she has failed to demonstrate she had a right under the FMLA with which Defendant could have interfered.

Second, Plaintiff contends that, although she did not inform Defendant she had a medical condition or request Defendant grant her FMLA leave, Defendant was on notice Plaintiff may have needed FMLA leave because of her rapid weight loss and hair thinning. [Doc. 32 at 4, 6.] As previously stated, adequate notice of an employee's need for FMLA leave is verbal notice. *Rhoads*, 257 F.3d at 382–83 (quoting 29 C.F.R. § 825.302(c)). As Plaintiff concedes, she failed to give Defendant verbal notice of the possibility that she may

require FMLA leave or that she had a medical condition.[6]  Further, the record shows Plaintiff only told one co-worker, a non-managerial employee, about her thyroid problem, and Plaintiff told other co-workers she was losing weight as the result of a diet. [Doc. 30-1 at 42:13–44:10; Doc. 30-2 at 19:15–20:13.]  Consequently, Plaintiff has failed to demonstrate she gave Defendant sufficient notice that the protections of the FMLA may apply, which is the second element required to establish an FMLA interference claim. Accordingly, the Court concludes Defendant is entitled to summary judgment with respect to Plaintiff's FMLA claim, the only claim remaining in this action.

**RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendant's motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 16, 2012
Greenville, South Carolina

---

[6] In giving notice to the employer, the employee need not even mention the FMLA. 29 C.F.R. §§ 825.302(c), 825.303(b). However, the employee must verbalize something that signals to the employer that the employee may need FMLA leave, and "[w]hen an employee seeks leave due to a FMLA-qualifying reason, for which the employer has previously provided FMLA-protected leave, the employee must specifically reference the qualifying reason for leave or the need for FMLA leave." *Id.* Therefore, Plaintiff was required to verbally communicate that she may need FMLA leave. Further, if Plaintiff's argument were correct that her breast cancer qualified as the serious medical condition that might require FMLA leave in 2009, to put Defendant on notice of her need for leave, Plaintiff was required to reference her breast cancer or her need for FMLA leave in verbalizing her notice to Defendant.